IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-00258-WDM-OES

GAIL J. WILKERSON, and
HIGHLAND DESIGN GROUP, INC.,

    Plaintiffs,

v.

SCHIRMER ENGINEERING CORPORATION, and
AON CORPORATION,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the motion for summary judgment filed by defendants Schirmer Engineering Corporation and Aon Corporation on February 3, 2005.  I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required.  For the reasons that follow, the motion will be granted in part.

### Background

Defendant Schirmer Engineering Company (Schirmer) is a fire protection engineering company and a subsidiary of Defendant Aon Corporation (Aon). Plaintiff Gail Wilkerson (Wilkerson) began working for Schirmer in October 2001, soon after Schirmer bought her previous employer, High Country Engineering.  At all relevant times, Wilkerson worked under the supervision of Glen Saraduke (Saraduke), Manager

of Schirmer's Denver office.

The remaining facts of this case are hotly disputed. According to Wilkerson, her job duties were quite varied, and included everything from computer-aided design (CAD) work, preparing plans and specifications, performing inspections and tests, locating sprinkler heads and alarms and marking them on drawings, contacting and meeting with clients, marketing, and acting as project manager on some projects. She worked only four days a week, as an accommodation to a disability — chronic visceral pain of the abdomen and pelvis related to adhesions in her abdomen.

This disability requires Wilkerson to receive injections every four to six months that are so strong that she is completely unable to walk, sit, stand, or care for herself for about four to five days afterwards. As another accommodation to her disability, Saraduke agreed to allow Wilkerson to "bank" extra hours worked so that she would not have to use sick or vacation leave to recover from these injections.

Wilkerson claims that around December 2001, Saraduke began to engage in various acts of sexual harassment and discrimination, disability discrimination, and outrageous conduct. For example, Wilkerson claims that Saraduke:

- asked her and her husband to go to a topless bar with him;
- referred to other female employees and applicants as "Barbie" and "Bay Watch Babe;"
- bragged about his sexual prowess and exploits;
- ordered her to wear steel-toed shoes when male employees were not required to;

- bragged to her about stealing and ingesting the pills she took for her disability; and,

- during a confrontation that occurred while he was driving her to a job site, Saraduke began driving wildly, reaching speeds of 80 miles per hour, while shouting at her and beating the steering wheel.

These and other events led Wilkerson and a co-worker named Donna Conrad to file, on February 11, 2002, written complaints with Aon's human resources department accusing Saraduke of sexual harassment and sex discrimination. After this, Wilkerson took about a week off of work while Schirmer and Aon claim to have dealt with the complaint. When Wilkerson returned to work, the sexual harassment stopped, but she claims that she continued to be discriminated and retaliated against in many ways, ultimately leading to her termination. For example, Wilkerson claims that Saraduke:

- pulled her off billable work,

- ordered her not to speak with clients,

- ordered her to cease marketing duties,

- pulled her off of all jobs where she was listed as project manager,

- rescinded previous accommodations for her disability — the four day workweek and "banking" of overtime, and

- recommended her termination to company executives, who accepted the recommendation on July 26, 2002.

After her termination, Wilkerson joined with Pilbin to form Highlands Design Group (Highlands), which focused on fire engineering jobs that required less than a

professional engineer's certification. After Carl Baldassarra, a Schirmer executive, learned of Highlands' activities, one of Schirmer's attorneys sent a complaint letter to the Board of Registration for Professional Engineers, alleging that Highlands might be involved in improper engineering activity.

Based on these facts, Wilkerson brings many claims: (1) sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, both in the terms and conditions of her employment, and in her firing; (2) sexual harassment in violation of Title VII; (3) discrimination due to her disability, in violation of the Americans With Disabilities Act of 1990 (ADA); (4) retaliation in violation of both Title VII and the ADA; (5) outrageous conduct, negligent supervision, and defamation under Colorado law.

As noted above, Schirmer and Aon dispute most of Wilkerson's assertions. To begin with, they argue that her job was primarily to do CAD work, and that she was unqualified to do many of the activities she claims as part of her job description. In addition, although acknowledging agreements for a four day workweek and "banking" of time, Schirmer and Aon claim that they were not accommodations for any disability — indeed, they argue that Wilkerson has failed to demonstrate that she is actually disabled. Moreover, while Schirmer and Aon admit that some of Saraduke's behavior prior to February 2002 was inappropriate, they argue that it did not rise to the level of sexual harassment. And finally, Schirmer and Aon deny that Saraduke retaliated against Wilkerson, arguing that she was terminated for purely financial reasons — as part of a one-person reduction in force.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

## Discussion

1. <u>Sex Discrimination</u>

Wilkerson brings a disparate treatment claim, alleging that she was discriminated against both in the terms and conditions of her employment, and in her firing. Although Schirmer and Aon's motion asks for summary judgment on all claims, neither their motion nor their reply brief address Wilkerson's claim for disparate treatment in the terms and conditions of employment. Accordingly, this issue is not before me.

As for Wilkerson's claim regarding her termination, Wilkerson has apparently chosen to proceed under the indirect format set forth in *McDonnell Douglas Corp v.*

*Green*, which provides a burden-shifting framework for assessing indirect, or circumstantial, evidence.  411 U.S. 792, 802-804 (1973); *see generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).  Under this framework, plaintiffs bear the initial burden of presenting a prima facie case of discrimination.  *Kendrick*, 220 F.3d at 1226.  The essential purpose of the prima facie test is to eliminate "the most common nondiscriminatory reasons for the plaintiff[s'] rejection."  Id. at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also St. Mary's Honor Center*, 509 U.S. at 506 (prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material).  "In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to 'raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations.'"  *Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (10th Cir. 1997)).  If plaintiffs establish a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, plaintiffs bear the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." Id. (quotation omitted). *See Kendrick*, 220 F.3d at 1230 (listing three ways of showing pretext: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

    a.    <u>Wilkerson's Prima Facie Case</u>

Schirmer and Aon first argue that Wilkerson cannot establish a prima facie case under the *McDonnell Douglas* framework. They argue that because this is a reduction in force case Wilkerson's prima facie burdens are to show: "(1) that she is within the protected age group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (citations omitted). Schirmer and Aon concede, for purposes of summary judgment, that Wilkerson has met the first three elements, but argue that she cannot meet the fourth.

In response, Wilkerson argues that this is not a true RIF case because she was the only one terminated and most of her job duties were absorbed by either new hires or other employees. Thus, she argues that her final prima facie burden is simply to

show that her sex was a motivating factor in her discharge — and that she has met this burden.

I agree with Wilkerson. The prima facie case is flexible, the critical inquiry being whether Wilkerson has demonstrated that she was fired "'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Moreover, courts tend to be skeptical of one-person RIF's, and have held that the critical inference of discrimination arises when "the terminated employee's duties are absorbed by other employees not in the protected class." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000); *see also Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005); *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1169-70 (10th Cir. 2003).

In this case, Wilkerson's evidence is sufficient to raise a reasonable inference that most of her job duties[1] were absorbed by new hires or other employees — many of whom were male — thus satisfying her burden. For example, Wilkerson points to deposition testimony from Saraduke indicating that although the CAD work was outsourced, her remaining work was distributed between himself, two other male employees, and a new female temp worker. (Ex. 4 to Pl.'s Resp., at 179-180.)

Alternatively, Wilkerson's evidence also indicates that the terms and conditions of employment were less favorable for women than men. For example, Pilbin's

---

[1] Schirmer and Aon strenuously protest Wilkerson's description of her job duties. However, their evidence to the contrary is insufficient to demonstrate that a reasonable jury could not credit Wilkerson's version of the facts.

deposition testimony indicates that Saraduke treated female and male employees much differently. (Ex. 5 to Pl.'s Resp., at 79; *see also* Verified Compl. at 7, ¶¶ 44-45 (indicating that Saraduke harshly rebuked Wilkerson for not wearing steel-toed shoes to a job site, but not requiring the same of male employees)). This evidence is also sufficient to meet Wilkerson's *de minimis* prima facie burden. *Plotke*, 405 F.3d at 1101 (noting that a variety of circumstances can give rise to the critical inference, including "preferential treatment given to employees outside the protected class").

      b.    <u>Wilkerson's Pretext Showing</u>

Schirmer and Aon next argue that even if Wilkerson can make a prima facie showing, she cannot meet her burden of demonstrating that their legitimate non-discriminatory reasons are actually pretext for a discriminatory motive. Schirmer and Aon's offer three non-discriminatory reasons: (1) the Denver office was losing substantial amounts of money; (2) Wilkerson was lowest in terms of seniority and skills; and (3) they had such a small amount of CAD work that it could be outsourced at a significant savings.

However, Wilkerson's evidence of pretext is sufficient to survive summary judgment. First, Wilkerson produced evidence that indicates that Saraduke set her up to fail; he regularly pulled her off of billable work to do other tasks, then recommended her termination because she did not do enough billable work. (Wilkerson Aff., Mar. 9, 2005, Pl.'s Ex. 3, at 3, ¶13; Saraduke Dep., Ex. 4 to Pl.'s Resp., at 177; Wilkerson Utilization Rept., Ex. S to Def.'s Mot.) Second, Wilkerson's evidence indicates that it was company policy that if a position was going to be eliminated, the company must

9

search to see if other positions were available for the affected employee. (Mackin Dep., Ex. 18 to Pl.'s Resp., at 176.) Nonetheless, the company chose not to offer Wilkerson a transfer because they doubted she would accept. (Rochholz Dep., Ex. 9 to Pl.'s Resp., at 165-66.) *See Kendrick*, 220 F.3d at 1230 (demonstrating that employer deviated from company policy is one common way of showing pretext). Third, Wilkerson testified that after she was fired, Carl Baldassarra, one of the executives involved in her termination, told her that "only a man should be in the position you had." (Wilkerson Aff., Mar. 9, 2005, Pl.'s Ex. 3, at 3, ¶19.)[2] While Wilkerson offers additional evidence, I need go no further — the evidence already discussed provides sufficient support for a reasonable inference of pretext. The motion for summary judgment should therefore be denied as to this claim.

2.  ADA Discrimination

Wilkerson also claims that Schirmer and Aon discriminated against her because of her disability, in violation of the ADA. To recover on such a claim, Wilkerson must first establish that she is disabled within the meaning of the ADA, which defines

---

[2] Schirmer and Aon argue that this evidence is unworthy of belief because Wilkerson did not mention this statement in her June 10, 2004 deposition, when questioned about her conversation with Baldassarra. They claim that her March 9, 2005 affidavit (taken after they filed their motion for summary judgment) is a sham attempt to create a factual dispute and should therefore be stricken.

I disagree. Although courts will sometimes disregard affidavits that contradict earlier sworn testimony, *see Franks v. Nimmo*, 796 F.2d 1230, 1236-37 (10th Cir. 1986), it is not clear that Wilkerson's omission actually contradicts her earlier testimony. However, even allowing for the possibility that a sufficiently conspicuous omission in earlier testimony could justify striking later testimony, the fact that Wilkerson's verified complaint, filed February 11, 2004, refers to Baldassarra's comments convinces me that her affidavit is not the type of last-minute contrivance that is so unworthy of belief that it should be deemed a sham and disregarded. (Cmpl. at 13, ¶84.)

disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A person is substantially limited in a major life activity if they are "unable to perform the activity or [are] significantly restricted in the ability to perform the major life activity compared to the general population." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001). In determining whether an individual is "substantially limited," the factfinder must consider three factors: "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact resulting from the impairment." *Id.*

Wilkerson attempts to show that she is disabled through a letter from her doctor and statements in her verified complaint.³ Clearly, the letter from her doctor is inadmissible hearsay, and should not be considered. *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("As a general matter . . . unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment."); *Thomas v. Int'l Bus. Machs.*, 48 F. 3d 478, 485 (10th Cir. 1995).

This leaves only the statements in the complaint, which are insufficient to raise a reasonable inference of disability. Wilkerson's complaint merely names her disability — chronic visceral pain of the abdomen — and asserts that it "substantially limits her

---

³ Wilkerson claims that she is disabled under § 12102(2)(A), she makes no argument that she is regarded as being disabled or has a record of disability such that she would qualify under §§ 12102(2)(B) or (C).

11

ability" to perform a list of major life activities. (Verified Compl. at 3, ¶12.) By itself, such an assertion is insufficient because it provides the factfinder no information to use in considering the three *Lusk* factors; indeed, it provides no information at all that a jury could use to decide for themselves whether or not Wilkerson is substantially limited in the activities claimed. *See Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598-99 (6th Cir. 1999) (holding an affidavit that is "merely conclusory, restating the requirements of the law" cannot create a genuine issue of material fact).[4] Although Wilkerson's complaint does describe the debilitating effects of treatments she receives every four to six months, these effects only last four to five days, and such intermittent effects alone are insufficient to establish disability. *See EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 952 (7th Cir. 2000). Summary judgment is therefore appropriate on Wilkerson's ADA claim.

3.  Title VII and ADA Retaliation

Wilkerson also claims that Schirmer and Aon retaliated against her in violation of Title VII and the ADA.[5] Both retaliation claims follow a burden-shifting framework

---

[4] I note that the Tenth Circuit held in *Lusk* that the plaintiff could not survive summary judgment because, although he demonstrated that he could not lift more than forty pounds, he did not produce "any comparative evidence as to the general population's lifting capacities. *Lusk*, 238 F.3d at 1241. Accordingly, he also could not have survived if he offered no evidence except an assertion that because of his heart impairments, he was substantially limited in his ability to lift things. It would certainly hamper the efficacy of summary judgment if ADA plaintiffs could survive summary judgment in this way — by simply providing *less* information.

[5] My determination that Wilkerson's ADA discrimination claim fails because she failed to produce sufficient evidence of her disability does not preclude her from succeeding on her ADA retaliation claim. A plaintiff may fail to establish a disability, yet succeed in an ADA retaliation claim; all that is required is that her protected activity was motivated by a "reasonable, good faith belief that the statute has been violated."

similar to that discussed above.  First, Wilkerson must establish the three elements of her prima facie case: (1) she engaged in protected activity under the Act, (2) she was subjected to an adverse employment action by the employer after or during the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999); *Berry v. Stevinson* Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996).  If she succeeds, Schirmer and Aon must articulate non-discriminatory reasons for their action.  Once they do so, the burden shifts back onto Wilkerson to show pretext.

Schirmer and Aon concede that Wilkerson's internal complaint was protected activity,[6] but argue that because her termination was the only adverse employment action, and because it came about five months before her termination, she cannot show causation.  *See Anderson*, 181 F.3d at 1179 (10th Cir. 1999) ("[A] three-month period, standing alone, is insufficient to establish causation.").

---

*Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).  Schirmer and Aon do not argue that Wilkerson lacked such a belief.

[6] It is doubtful that Wilkerson's February 11, 2002 internal complaint, which mentions nothing about the ADA or a disability, actually qualifies as protected activity.  *See* 42 U.S.C. § 12203 ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful *by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter*.") (emphasis added).  However, Schirmer and Aon concede this issue.  In any event, Wilkerson's evidence indicates that on February 28, 2002 her attorney sent a letter to Aon's human resources department asking for accommodations for her disability.  (Letter to Rebecca Schmidt, Pl.'s Ex. 17.)  This letter does qualify as protected activity under the ADA, and for substantially the reasons given below, Wilkerson's ADA retaliation claim would survive summary judgment.

However, Wilkerson claims multiple acts of retaliation — not just her termination. "To be an adverse action, the employer's conduct must be 'materially adverse' to the employee's job status." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003); *see also Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001) (listing several qualifying actions: "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits") (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Not all of Wilkerson's claimed adverse actions meet this standard, but some do. For example, she produced evidence that following her internal complaint, Saraduke took many of her job duties away, reassigned her less-desirable duties, and decided she could no longer work the four-days-a-week schedule she had always worked before. (Wilkerson Aff., Mar. 9, 2005, Pl.'s Ex. 3, at 3, ¶13; Verified Compl. at 7, ¶46; Saraduke Memo, Ex. 16 to Pl.'s Resp.)  And, Schirmer and Aon do not argue that these adverse actions did not occur close enough to her internal complaint to raise an inference of causation.  I therefore find that Wilkerson has satisfied her prima facie burden.

The burden now shifts to Schirmer and Aon to articulate legitimate non-discriminatory reasons for their adverse actions.  However, presumably because they believed that Wilkerson's termination was the only qualifying adverse action, Schirmer and Aon merely refer back to the reasons they previously gave for her termination. They offer no explanation at all justifying the decisions to change the four-day

workweek or Wilkerson's job duties. They have thus failed to carry their burden, and summary judgment should be denied on this claim.[7]

4.     Sexual Harassment

Schirmer and Aon do not seriously dispute the fact that there is a genuine issue of material fact as to whether Saraduke's pre-complaint behavior constituted sexual harassment. (*See* Def.'s Mot. at 22; Def.'s Reply at 19.) Rather, they repeatedly argue a point that Wilkerson readily concedes — that Saraduke's behavior improved after Wilkerson's February 2002 internal complaint. However, they fail to explain how this fact entitles them to summary judgment. They appear to argue that they are entitled to an affirmative defense under *Faragher v. City of Boca Raton* because they responded effectively to Wilkerson's internal complaint. 524 U.S. 775 (1998); *see also Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). However, this affirmative defense is barred if the sexual harassment culminated "in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. at 808. I have already found that Wilkerson's evidence raises a reasonable inference that Saraduke retaliated against her following her internal complaint. For generally the same reasons, her evidence is also sufficient to raise a triable issue as to whether Saraduke's sexual harassment culminated in tangible employment actions against her.

---

[7] I note that it is somewhat unusual for a defendant in a discrimination case to fail to meet their minimal burden of articulating legitimate non-discriminatory reasons. And, based on their arguments regarding Wilkerson's other claims, I might make an educated guess what reasons Schirmer and Aon would give, had they thought to address the issue. However, even were I to engage in such speculation, I would still find that Wilkerson has produced sufficient evidence of pretext to survive summary judgment.

5.  Defamation

Wilkerson also brings defamation claims based in part on the letter the Schirmer and Aon sent to the Board of Registration for Professional Engineers (Board), alleging that Highland Design Group was improperly engaging in engineering activity.  In support of their motion for summary judgment, Schirmer and Aon make three arguments: (1) Wilkerson cannot show publication; (2) they are entitled to immunity under Colo. Rev. Stat. § 12-25-118 because they acted in good faith; and (3) Wilkerson cannot prove damages.

   a.  Publication

In order to succeed in her defamation claim, Wilkerson must show publication of the allegedly defamatory remarks.  *Denver Publ'g. Co. v. Bueno*, 54 P.3d 893, 899 (Colo. 2002).  Under Colorado law, this requirement is met if these remarks are understood by any person other than the plaintiff.  *Id.*  Schirmer and Aon appear to assume that there is no publication unless the statements are transmitted to individuals *other than state officials*.  They fail, however, to support this proposition with any authority, and I find no support for such a proposition.  Their motion should be denied on this ground.

   b.  Immunity

Schirmer and Aon are entitled to immunity from defamation liability if their complaint to the Board was made in good faith.  Colo. Rev. Stat. § 12-25-118.[8]  In

---

[8] This section provides the following:
Any member of the board, any member of the board's staff, any person acting as a witness or consultant to the board, any witness testifying in a proceeding authorized under this part 1, and any person

support of their motion for summary judgment, Schirmer and Aon assert their good faith and point to evidence that tends to show that their letter to the Board was justified. However, against the backdrop of Schirmer and Aon's knowledge that Wilkerson had filed complaints with the EEOC against them (Def.'s Mot. at 12, ¶63.), Wilkerson's evidence that Baldassarra did not understand the applicable certification requirements (Baldassarra Dep., Pl.'s Ex. 39, at 141-149) raises a reasonable inference that the complaint was not made in good faith. Summary judgment is therefore inappropriate on this ground.

### c. Damages

Finally, Schirmer and Aon argue that Wilkerson cannot show any damages proximately caused by their letter to the Board. However, as Wilkerson correctly points out, in a defamation *per se* claim such as this, *Denver Publ'g. Co.*, 54 P.3d at 899, n.9, damages are presumed and need not be proven. *Williams v. Dist. Ct.*, 866 P.2d 908, 911 (Colo. 1993).

In sum, Schirmer and Aon have failed to provide any grounds upon which they are entitled to summary judgment as to Wilkerson's defamation claim.

---

who lodges a complaint pursuant to this part 1 shall be immune from liability in any civil action brought against him or her for acts occurring while acting in his or her capacity as board member, staff, consultant, or witness, respectively, if such individual was acting in good faith within the scope of his or her respective capacity, made a reasonable effort to obtain the facts of the matter as to which he or she acted, and acted in the reasonable belief that the action taken by him or her was warranted by the facts. Any person participating in good faith in lodging a complaint or participating in any investigative or administrative proceeding pursuant to this part 1 shall be immune from any civil or criminal liability that may result from such participation pursuant to this part 1.

Colo. Rev. Stat. § 18-25-118.

6. <u>Negligent Supervision</u>

To prevail on her negligent supervision claim, Wilkerson must show that Schirmer and Aon knew or should have known that Saraduke's behavior would subject her to an unreasonable risk of harm. *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993). Wilkerson claims that after her February 2002 internal complaint, Schirmer and Aon had notice of Saraduke's dangerous and retaliatory behavior, yet did nothing to stop it. Wilkerson's evidence, however, does not support her assertions, and fails to show that any of Saraduke's superiors had notice of his retaliation until after Wilkerson was already terminated. *See Biel v. Alcott*, 876 P.2d 60, 62-63 (Colo. Ct. App. 1993) (affirming grant of summary judgment because employer had no notice of employee's misbehavior). For example, Wilkerson claims that Pilbin put the company on notice by submitting a report of Saraduke's retaliation, but provides no evidence of this report. Therefore, summary judgment should be granted on Wilkerson's negligent supervision claim.

7. <u>Outrageous Conduct</u>

Wilkerson's final claim is one for outrageous conduct under Colorado tort law. To prevail on this claim she must meet an "extremely high" standard — "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970).

Wilkerson claims four grounds for her claim: (1) the incident when Saraduke stole her medication and swallowed it; (2) Saraduke's pattern of retaliation against her; (3) attempts to get her to sign a waiver and release of rights after her termination; (4) reporting Highlands Design Group to the State without grounds.

To the extent that these claims are supported by competent evidence, I find that no reasonable jury could conclude that they rise to the level of outrageous conduct. Therefore, summary judgment is appropriate as to this claim.

Accordingly, it is ordered:

1. Defendants' motion for summary judgment, filed February 3, 2005 (Docket No. 56), is granted in part.

2. Plaintiff's claims for discrimination under the ADA, negligent supervision, and outrageous conduct are dismissed with prejudice.

3. The case remains pending for trial on Plaintiff's claims for disparate treatment and sexual harassment under Title VII, retaliation under Title VII and the ADA, and defamation.

DATED at Denver, Colorado, on January 30, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge